IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**DARRELL JOHNSON and**                                                                 **PLAINTIFFS**
**A. JAN THOMAS, JR., Bankruptcy Trustee**
**in the Matter of Darrell W. Johnson and**
**Janet K. Johnson, Debtors**

**V.**                           **CASE NO. 1:06-cv-00017-JLH**

**ROCKWELL AUTOMATION, INC.;**
**CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.,**
**dba Keathley-Patterson Electric; and**
**JOHN DOES 1-5**                                                        **DEFENDANTS**
_____

### PLAINTIFFS' MOTION TO COMPEL and SUPPORTING MEMORANDUM
_____

### MOTION

1. The plaintiffs ask the court to order the defendants to produce *complete* copies of *all original* reports of complaints or incidents or accidents or injuries involving starter buckets manufactured by the defendants, as requested in the plaintiffs' Requests for Production 15-18 and 22.  *See* Exhibit A (requests for production and responses).

2. This should include complete copies of reports created and provided to Rockwell Automation, Inc.'s law department, including but not limited to those created pursuant to Rockwell's procedure captioned "Product Safety – Investigation of Accidents"  *See* Exhibit D (procedure).

3. This should include complete copies of all *actual* Equipment Damage – Personal Injury Forms, as discussed during the deposition of Rockwell's Dan Beebe, rather than merely information from those forms entered into Rockwell's technical support database, which is what Rockwell has produced to date.  *See* Exhibit G (Beebe depo. excerpts).

4. This should include all other records, if any, responsive to the plaintiffs' Requests for Production 15-18 and 22. *See* Exhibit A (requests for production and responses).

5. The plaintiffs further ask the court to order the defendants to produce Rockwell's Incident Reporting Card, Publication 6155, which "summarizes the important considerations and steps to be taken when reporting an incident involving an allegation that a Company product has failed or malfunctioned or that a Company service was improperly performed." Exhibit D, ¶ 9.0 (Rockwell's "Product Safety – Investigation of Incidents" procedure). The card is responsive to the plaintiffs' Request for Production 28. *See* Exhibit F (requests for production and responses).

6. The attorneys for the parties, Neil Chamberlin and David Donovan, conferred on this motion by way of letters dated 02/10/08 through 05/01/08 (Exhibits H-K) and by a series of emails (not attached), as well as a telephone conversation.

7. The following exhibits are submitted in support of this motion:

| | |
|---|---|
| Exhibit A | Defendant's Answers to Plaintiff's Third, Fourth, and Fifth Sets of Interrogatories and Responses to Requests for Production of Documents |
| Exhibit B | Example Tech Support (TS) form |
| Exhibit C | Letter from David Donovan producing nine "Injury" Tech Support (TS) forms |
| Exhibit D | Rockwell Procedure: "Product Safety – Investigation of Incidents" |
| Exhibit E | Email from Dan Cagle (of Eastman Chemical Company) to Greg Downs (of Rockwell Automation, Inc.) producing Equipment Damage – Personal Injury Form for Darrell Johnson accident |
| Exhibit F | Separate Defendant Rockwell Automation, Inc.'s Answers to Plaintiff's Eighth Set of Interrogatories and Responses to Requests for Production of Documents |
| Exhibit G | Dan Beebe deposition excerpts |

  Exhibit H  Letter from Chamberlin to Donovan

  Exhibit I  Letter from Donovan to Chamberlin

  Exhibit J  Letter from Chamberlin to Donovan

  Exhibit K  Letter from Donovan to Chamberlin

WHEREFORE, the plaintiffs move the court to compel the defendants to produce all records responsive to the plaintiffs' Requests for Production 15-18, 22 and 28, including those mentioned above and any other responsive records.

            Respectfully submitted,

            James Bruce McMath, #75090
            Neil Chamberlin, #93222
            MCMATH WOODS, P.A.
            711 W. Third Street
            Little Rock, AR 72201
            (501) 396-5400

        By:  /s/ Neil Chamberlin

## MEMORANDUM

**Requests for Production**

The plaintiffs served, and Rockwell answered, the below requests for production:

  REQUEST FOR PRODUCTION NO. 15:  Produce complete reports for all complaints or incidents or accidents or injuries involving starter buckets manufactured by you.  (If this information is only available for a certain time frame, please advise.)

  ANSWER:  Produced herewith as Bates Nos. 281-392 ("Component: STARTER/CONTACTOR").

  REQUEST FOR PRODUCTION NO. 16:  Produce complete reports for all complaints or incidents or accidents or injuries involving defeater levers on starter buckets manufactured by you.  (If this information is only available for a certain time frame, please advise.)

  ANSWER:  Produced herewith as Bates Nos. 264-277.

   REQUEST FOR PRODUCTION NO. 17:  Produce complete reports for all complaints or incidents or accidents or injuries involving operating handles on starter buckets manufactured by you.  (If this information is only available for a certain time frame, please advise.)

   ANSWER:   Produced herewith as Bates Nos. 393-431 ("Component: HANDLE").

   REQUEST FOR PRODUCTION NO. 18:  Produce complete reports for all complaints or incidents or accidents or injuries involving the inadvertent operation of the operating handle to the "on" position on starter buckets manufactured by you.  (If this information is only available for a certain time frame, please advise.)

   ANSWER:  None.

. . .

   REQUEST FOR PRODUCTION NO. 22:  Produce complete reports for all complaints or incidents or accidents or injuries involving electric arc flashes in starter buckets manufactured by you.  (If this information is only available for a certain time frame, please advise.)

   ANSWER:  None.

Exhibit A.

. . .

   REQUEST FOR PRODUCTION NO. 28:  From the time you began designing the product described in the complaint to the present, produce any written safety programs, safety reviews, safety analyses, or similar written records governing the safe production, use, repair, and post-production monitoring of the product.

   ANSWER:  See discussion of available documents in the deposition of Dave Rollay.  Also, see all documents produced in Milwaukee, Wisconsin, on August 13, 2007, prior to the deposition of Dave Rollay.  Also, see all documents produced pursuant to letter from David Donovan to Neil Chamberlin dated September 17, 2007.  Additional documents responsive to this request, if they exist and to the extent they can be located or obtained, will be produced and this response supplemented.

Exhibit F.

**Records Produced**

An example of the above-referenced records that Rockwell produced (*i.e.*, Bates Nos. 281-392, 264-277, and 393-431) is attached.  Exhibit B.  These records are not "complete reports" for all complaints, incidents, and accidents involving the defendants' starter buckets, as requested.  Nor are they the actual and original reports.  They are, instead, printouts from Rockwell's technical support database, taken from other records.  Examples of such other records include Rockwell's "Equipment Damage – Personal Injury Forms."  Those forms are discussed further below.  Rockwell has not produced any of the actual Equipment Damage – Personal Injury Forms, with the exception of the form concerning Darrell Johnson's accident (which was actually completed by Dan Beebe of Eastman Chemical Company, Johnson's employer, and then forwarded to Rockwell).  Exhibit E.

The attorneys for both sides conferred on the above requests and responses.  Rockwell then produced additional printouts from its technical support database (but not the actual Equipment Damage – Personal Injury Forms or other original reports) in which the "complaint" field in the database was coded with the word "injury."  Exhibit C.  This consisted of a total of nine reports.  *Id.*  With one exception, each report contained scarce information and was two pages in length or shorter.  *Id.*  The one exception was a printout for Johnson's accident described in the complaint, for which Rockwell produced a nine-page report.  *Id.* at 000444-000452.

Rockwell then produced a disk containing reports within its technical support database, but the disk is again limited to information entered into that database and does not contain the original reports discussed herein.

**"Product Safety – Investigation of Incidents"**

The attorneys for both sides then traveled to the home of Rockwell in Milwaukee, where Rockwell produced additional records (but not additional accident or incident reports) and where the plaintiffs' attorneys took depositions of Rockwell employees.

One of the documents that Rockwell produced in Milwaukee was a Rockwell procedure entitled "Product Safety – Investigation of Incidents."  Exhibit D.  The procedure instructs Rockwell employees to gather the following list of information about each incident:

  5.1.1   Description of the incident

  5.1.2   Extent of injuries, damage or loss (estimated)

  5.1.3   Location of incident (specific machine, building, plant, city, state)

  5.1.4   Date and time of incident

  5.1.5   *Names of injured person(s)*, witnesses to incident, operator(s) of equipment involved, and person(s) in charge at the site at the time the incident occurred.

  5.1.6   Description of the equipment involved in the incident, both Rockwell Automation and other company products.  This should include information concerning application of the Rockwell Automation products in the particular installations, including modifications or changes to the product or application.

  5.1.7   Identification of all equipment involved (Rockwell Automation and other manufacturers):

  - manufacturer's name(s)
  - model number(s)
  - serial number(s)
  - any other available identifying data
  - for Rockwell Automation products, record the test code stamp's information and the enclosure type's number

  5.1.8   Conditions of equipment involved and the surrounding site, including description of any dust, dirt, or liquid contaminants and whether they have entered equipment enclosures; include maintenance and repair record history.

6

      5.1.9   If permission can be obtained, *color photos* should be taken of the incident site and equipment, include close-ups of equipment.

      5.1.10  Control circuit schematic (or software program), if applicable and if it can be obtained.

*Id.*, ¶ 5.0 (emphasis added).

The procedure instructs Rockwell employees to send the reports directly to Rockwell's law department, not to the technical support department which maintains Rockwell's technical support database: "The report must be sent directly to the *Law Department*." Exhibit D, ¶ 8.0 (emphasis added). The defendants have not produced any reports containing information in the detail described above. For example, the plaintiffs have not received any reports providing "names of injured person(s)" or "color photos." The defendants also have not produced any reports maintained by Rockwell's law department.

The procedure instructs Rockwell employees to avoid the use of language unfavorable to Rockwell: "Language such as 'defective,' 'faulty,' 'failed,' etc. must not be used to describe products, since such terms represent conclusions rather than facts." Exhibit D, ¶ 7.1. Thus, any record printed from Rockwell's above-mentioned database will, by Rockwell policy, have been "sanitized" of any offending language appearing in the original report.

The procedure mentions a separate document (not yet produced) instructing Rockwell employees on how to respond to allegations that Rockwell is at fault. "A card is available which summarizes the important considerations and steps to be taken when reporting an allegation that a Company product has failed or malfunctioned or that a Company service was performed improperly. The card is Publication 6155 and is available from the Law Department." Exhibit D, ¶ 9.0. Rockwell did not produce this card, or any information concerning any "allegation that a Company product has failed or malfunctioned or that a Company service was performed

7

improperly." The card is responsive to the plaintiffs' Request for Production 28, seeking "any written safety programs, safety reviews, safety analyses, or similar written records governing the safe production, use, repair, and *post-production monitoring* of the product."  Exhibit F (emphasis added).

### Dan Beebe Deposition

One of the Rockwell employees that the plaintiffs' attorneys deposed in Milwaukee was Dan Beebe. Beebe is a Senior Marketing Engineer employed by Rockwell for the past 35 years. Exhibit G at 5. In 1983, Beebe helped to set up Rockwell's technical support department. *Id.* at 6-7. The department functions chiefly as its name indicates. That is, it chiefly responds to "technical support" inquires. But it also receives information on injuries from time to time. Beebe testified:

> Q. What is an equipment damaged personal injury report form? [*See* Exhibit E hereto.] I did not ask you that already, did I?
>
> A. It is a form we fill out within the technical support group and forward on to legal or receive from the field and forward on to legal that indicates there has been an incident in the field.
>
> Q. This is actually a document separate from a document printable from the technical support database, am I right?
>
> A. Correct.
>
> Q. All -- is it -- am I also true, I am guessing here, that you may take information from the form and input it into the technical support database?
>
> A. Yes.
>
> Q. Okay. But not necessarily they are the same thing?
>
> A. No. They are totally different forms.

Exhibit G at 26-27.

. . .

> Q. How far back does the database containing personal injury report forms go?
>
> A. We do not have a database that stores the information that was supplied on the form. The database only has a blank form that we forward on to the field.
>
> Q. Would you explain that again? I don't understand that.
>
> A. The PCP Information Conference is a library database, and we just store the blank general form in that database.
>
> Q. Okay.
>
> A. Once the field fills that form out and return it back to us, we insert that data into the technical support database. There is no general database that stores all the personal injury forms.
>
> Q. Okay. So once you received a completed personal injury report –
>
> A. Yes.
>
> Q. -- which is a computerized document, correct?
>
> A. Correct.
>
> Q. That actual report is not kept in a database of similar reports?
>
> A. No.
>
> Q. And it would be found -- whatever information was received by way of that form would be found where?
>
> A. In the technical support database. We would forward that over to the technical support database.
>
> Q. Okay. Does that database include information from the form, or does it include a version of the form itself?
>
> A. Information from the form.

Exhibit G at 28-29.

. . .

Q. All right. I think I understand. Now, I take it there is no -- are there any archives whether hard copy or computer of the actual personal injury reports?

A. I do not know.

Q. In this case Darrell Johnson sued in 2006 concerning an accident occurring in February of 2004, and Rockwell did produce a personal injury report form even though it was two or three years later that we made the request. Do you know why Rockwell had that form in Darrell Johnson's case?

MR. DONOVAN: Object to form of the question. You can answer.

THE WITNESS: I don't know.

BY MR. CHAMBERLIN:

Q. Normally would Rockwell have the actual personal injury report form two or three years after an incident?

A. It is possible.

Q. Okay. Where would you go? If you wanted to go look for such forms, where would you go for look for them?

A. Legal.

. . .

Q. Okay. You -- I believe you said that the personal injury form is normally completed by somebody who works for Rockwell, do I have that wrong or right?

A. It can be completed by an internal person, it can be completed by someone in the field, either by a salesman, distributor, customer. It is a general form that we send out to be completed and sent back to us, so it does not necessarily have to be a Rockwell employee that fills out the form.

Q. Okay. Who usually fills out the form?

MR. DONOVAN: Object to the form of the question. Go ahead.

THE WITNESS: Somebody in the field.

BY MR. CHAMBERLIN:

10

> Q. Okay.
>
> A. That is in contact with the customer.
>
> Q. Does your definition of field include salespersons, approved distributors, and customers?
>
> A. Yes.

Exhibit G at 33-35.

Thus, the Equipment Damage – Personal Injury Forms discussed by Beebe are completed by "someone in the field," then forwarded to Rockwell's technical support department, then forwarded to "legal." The technical support department "inserts" information from the personal injury forms into the technical support database, but does not keep copies of the actual forms. By policy, as mentioned above, the technical support department must only input sanitized information, and not language such as "defective" or "faulty" or "failed." Exhibit D, ¶ 7.1. The actual Equipment Damage – Personal Injury Forms are "totally different forms" from those printable from the technical support database and produced by Rockwell in this case (with one exception).

Furthermore, these are merely the forms that Rockwell's technical support department uses. There is no evidence that other employees throughout Rockwell use these forms to record complaints, incidents, accidents, or injuries – or that the other employees route reports of such events through the technical support department. After all, who would report an injury to the "technical support" department? Under the above-mentioned policy, employees outside of the technical support department are directed, instead, to send reports of injuries directly to Rockwell's law department. Exhibit D, ¶ 8.0.

**Attorney Conferring**

As mentioned in the above motion, attorneys for the plaintiffs and defendants conferred on the matters discussed herein by letters dated 02/10/08 through 05/01/08 (Exhibits H-K), as well as by a series of emails (not attached) and a telephone discussion.

In a letter dated 04/07/08, Rockwell's attorney wrote, in part, "Regarding your request for personal injury forms, I have determined from discussions with Rockwell that the forms you requested are not filed or maintained and there is no set of personal injury form documents which could be retrieved for production in this case." Exhibit I.

The plaintiffs' below-signed attorney took the above statement to mean (in error, it now appears) that no such forms exist, except for the single form that Rockwell produced in this case concerning Johnson's accident (*i.e.,* Exhibit E). Thus, the plaintiffs' below-signed attorney responded, by letter, in part:

> I received your 04/07/08 letter stating that there is no set of personal injury form documents which could be retrieved for production in this case. Thus, as it stands, the original "equipment damage – personal injury form" that Rockwell produced in this case for Darrell Johnson's accident is the only original report of any accident, incident, or injury, dating from its inception until today, that Rockwell is capable of producing. I am skeptical, but I suppose we must accept Rockwell's declaration. So I will not file the motion to compel that we have conferred on.
>
> There is one exception. I still seek the card that we discussed, instructing Rockwell employees on how to respond to allegations that Rockwell is at fault. The card is mentioned in Rockwell's procedure number 900-50-10, captioned "Product Safety – Investigation of Accidents." That procedure states, "A card is available which summarizes the important considerations and steps to be taken when reporting an allegation that a Company product has failed or malfunctioned or that a Company service was performed improperly. The card is Publication 6155 and is available from the Law Department." The card is responsive to the plaintiffs' Request for Production 28, seeking "any written safety programs, safety reviews, safety analyses, or similar written records governing the safe production, use, repair, and *post-production monitoring* of the product." I will calendar this for the end of the month. If Rockwell will produce this card, please ask it to do so by then.

Exhibit J.

On 05/01/08, the defendants' attorney responded, by letter:

> Thank you for your letter of April 13, 2008.  The card you refer to, referenced as Publication 6155, is protected from disclosure by attorney/client privilege.  This is a communication from the legal department to employees.  *Likewise, reports by employees to the legal department are privileged.*

Exhibit K (emphasis added).

It is the last sentence that catches the attention of the plaintiffs' below-signed attorney. The last sentence reveals that Rockwell treats original reports of complaints, incidents, accidents, and injuries as privileged because Rockwell's employees are instructed to make such reports to the legal department.  That is far different than saying that such original reports do not exist. Furthermore, it would strain credulity to ask one to believe that Rockwell, a global manufacturer of electrical automation equipment, possesses only one original report of an accident – that accident coincidentally being the one involved in this case.

### **Argument**

Rockwell contends in its briefing that it has manufactured "millions" of products similar to the one at issue, but that there are "no reports" of injuries or accidents similar to the one described in the complaint.  Docket No. 75 at 2.  Rockwell states that it will introduce evidence at trial that it has "never before received notice of any accidents of a similar nature."  Docket No. 74 at 1-2.

As previously briefed, the plaintiffs contend that Rockwell's technical support database, as well as Rockwell's practices for informing itself of and investigating accidents, are so insufficient as to render the database an unreliable source for determining whether similar accidents have occurred.  *See* Docket No. 67.  The court denied, without prejudice, the plaintiffs'

motion *in limine* to exclude evidence on the *absence* of similar accidents, and ruled that it would make an at-trial decision on whether the defendants establish the foundation necessary to introduce such evidence.  Docket No. 76.

The plaintiffs, therefore, must prepare to counter, at trial, Rockwell's contentions that there have been no similar accidents – *even though* Rockwell has not produced the *original* records of other accidents, but instead withholds those records under a claim of privilege.  As previously mentioned, the only original record of an accident that Rockwell produced in this case is the Equipment Damage – Personal Injury Form for Johnson's accident, completed by Eastman's Dan Cagle.  Exhibit E.  For other accidents, Rockwell simply produced second-hand, sanitized information from its technical support database, limited to those accidents that might be recorded in that database.  *See, e.g.,* Exhibit C.

Beebe's testimony shows that the original records of accidents, including the Equipment Damage – Personal Injury Forms, are not kept in the technical support database or in any other database.  They are instead forwarded to "legal."  Exhibit G at 26.  Information from the forms, but not the actual forms, should (but might not) be input into the technical support database, depending on how vigilant Rockwell has been over the years at inputting such information.  *Id.* at 29.  That database contains information on accidents, therefore, *only if* someone in Rockwell's technical support group received the original accident record and input information from that record into the database.  And even then, by Rockwell policy, only sanitized versions of the original accident records – omitting words such as "defective" or "faulty" or "failed" – exist in the database.  *See* Exhibit D, ¶ 7.1.

Furthermore, as previously briefed, Rockwell's technical support database can be searched for injuries *only if* the person inputting the information opted to code the incident into

14

the database as an "injury," rather than something else.  *See* Docket No. 67 at 6-7 (explaining that Rockwell's technical support database will only accept one complaint code and that if the user chooses a complaint code other than "injury," the incident will not appear in response to a query for complaints of injuries).  Also, the database can only be searched for injuries reported in and after 2003, or 1995 at the earliest.  *See id.* at 6-7 (explaining that Rockwell did not keep records on accidents before 1983, destroyed records before 1995, and did not make the database directly accessible until 2003).

The plaintiffs should not be required to accept only that information on similar accidents which is available in Rockwell's technical support database.  The evidence discussed herein shows that information from that database is second-hand, sanitized, under-inclusive, and unreliable.  The evidence shows that Rockwell possesses *original* records on accidents, including but not necessarily limited to Equipment Damage – Personal Injury Forms, maintained by its legal department.

Rockwell's claim that the requested records are privileged is in error.  First, this court may determine that Rockwell waived any privilege claims by not asserting them in its answers the requests at issue, *i.e.*, Request for Production Nos. 15, 16, 17, 18, 22 & 28.  Exhibits A & F. "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . expressly make the claim."  Fed. R. Civ. P. 26(b)(5).  "To withhold materials without such notice is contrary to the rule . . . and may be viewed as a *waiver* of the privilege or protection."  Advisory Committee Notes, 1993 Amendments, to Fed. R. Civ. P. 26 (emphasis added).

Second, Rockwell has not made a showing of proof that a privilege exists, as it has the burden of doing.  *See Schipp v. General Motors Corporation*, 457 F. Supp. 2d 917, 921 (Holmes,

J.) ("First, '[t]he burden of showing that a privilege applies is upon the party asserting it.'" (citation omitted)).  The showing must include a "factual basis."  *Brawner v. Allstate Indemnity Company*, 2007 WL 3229169 at *3 (E.D. Ark. 2007) (Eisele, J.) (citations omitted).

Third, the lawyer-client privilege asserted by Rockwell applies only to "confidential" communications, *see* Ark. R. Evid. 502 (a)(5) & (b), whereas the records sought have not been treated by Rockwell as confidential.  "The attorney-client privilege only applies to confidential communications, not to those uttered in public or intended for disclosure to others or in fact disclosed by the client to others."  *Shankle v. State*, 309 Ark. 40, 47, 827 S.W.2d 642, 646 (1992) (citation omitted); *see also Brawner, supra* (in diversity cases, federal courts apply state law to resolve lawyer-client privilege claims).  Rockwell itself asserts (although the plaintiffs disagree) that the reports sought are available, albeit in second-hand form, in its technical support database.  That means that they are shared with the technical support department, rather than being confidentially maintained in the legal department.  Rockwell, in fact, takes the position that "information received regarding accidents, incidents, incidents, injuries, etc., are input into the technical support database *which has already been produced*."  Exhibit I (emphasis added).  The plaintiffs disagree that the database represents a complete repository of the information sought, as discussed above.  Nonetheless, Rockwell cannot logically argue that reports of complaints, incidents, accidents, and injuries are "confidential," while also arguing that they have already been produced in this case.

Fourth, the lawyer-client privilege asserted by Rockwell applies only to confidential communications "made for the purpose of facilitating the rendition of professional legal services to the client."  Ark. R. Evid. 502(b).  There is no evidence, and no reason to believe, that the

records sought concern the rendition of legal services, as opposed to a manufacturer simply keeping records on reported problems with its products in the field.

Fifth, and most importantly, it would be unfair to the plaintiffs to allow Rockwell to assert, as it does in this case, that it has "never before received notice of any accidents of a similar nature" and that it will present evidence of same to the jury, Docket No. 74 at 1-2, while denying the plaintiffs access to the very records that might be used to test that statement – not to mention to prove their case.

The court should order Rockwell to fully and completely respond to the plaintiffs' Requests for Production 15-18 and 22 by producing "complete reports for all complaints or incidents or accidents or injuries involving starter buckets manufactured by you." *See* Exhibit A. That includes all Equipment Damage – Personal Injury Forms. That includes all incident reports "sent directly to the Law Department" under Rockwell's procedure entitled "Product Safety – Investigation of Incidents." Exhibit D. That includes all other original records on incidents, accidents, or injuries involving starter buckets.

The court should also order Rockwell to produce the card known as Publication 6155. As discussed above, the card "summarizes the important considerations and steps to be taken when reporting an allegation that a Company product has failed or malfunctioned or that a Company service was performed improperly." Exhibit D, ¶ 9.0. As also discussed above, the card is responsive to the plaintiffs' Request for Production 28. Exhibit F. The card may provide further information on what original accident records exist and where they may be found.

                                          Respectfully submitted,

                                          James Bruce McMath, #75090
                                          Neil Chamberlin, #93222
                                          MCMATH WOODS, P.A.
                                          711 W. Third Street
                                          Little Rock, AR 72201
                                          (501) 396-5400

                              By:    /s/ Neil Chamberlin

## CERTIFICATE OF SERVICE

      I certify that, on May 3, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to:

David M. Donovan
ddonovan@wdt-law.com

Thomas J. Diaz
tdiaz@wdt-law.com

James Bruce McMath
bruce@mcmathlaw.com

                                                          /s/ Neil Chamberlin